UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN BROEMER,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF JUSTICE; CENTRAL INTELLIGENCE AGENCY; NATIONAL SECURITY AGENCY; DEPARTMENT OF HOMELAND SECURITY; DEFENSE INTELLIGENCE AGENCY; SECRET SERVICE; UNITED STATES ARMY; UNITED STATES HOUSE OF REPRESENTATIVES; UNNAMED AGENTS AND EMPLOYEES OF THESE DEPARTMENTS, AGENCIES, BUREAUS AND BRANCHES; CITY OF LOS ANGELES; COUNTY OF LOS ANGELES; GEORGE WALKER BUSH; DICK CHENEY; and DOES 1 THROUGH 10<br><br>    Defendants. | CASE NO. 08-05515 MMM (RZx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

*Pro se* plaintiff Glen Broemer commenced this action on August 21, 2008 ("Broemer V"). On March 2, 2009, the federal defendants[1] moved to dismiss Broemer's first amended complaint.[2]

---

[1]As named in the first amended complaint, the "federal defendants" include George W. Bush, Dick Cheney, the Federal Bureau of Investigation, the Department of Justice, the Central Intelligence Agency, the National Security Agency, the Department of Homeland Security, the Defense Intelligence Agency, the Secret Service, the United States Army, the Internal Revenue Service, the House of Representatives, the Office of Personnel Management, the National Personnel Records Center, and

Broemer filed opposition on March 13.[3] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court found this matter appropriate for decision without oral argument. Having carefully reviewed and considered the papers submitted, the case history, and the parties' arguments, the court grants in part and denies in part defendants' motion to dismiss.

## I.  FACTUAL BACKGROUND

Broemer contends that his claims "relate to events from the mid-70's to the present."[4] He states that "the federal government has not been forthcoming as to who has been employing him, using him in government operations, or monitoring him in his apartment or online over the course" of this extended time period, leading him to file suit.[5] In essence, Broemer maintains that defendants[6] manipulated his career and prevented him from practicing law and/or pursuing employment in the entertainment industry and/or publishing.[7] Broemer alleges that, through this

---

"unnamed agents and employees of these Departments, Agencies, Bureaus, and Branches."

[2]See Notice of Motion and Motion of Federal Defendants to Dismiss First Amended Complaint; Memorandum of Points and Authorities; Exhibits ("Defendants' Motion"), Docket No. 42 (Mar. 2, 2009); see also Reply Brief in Further Support of Motion of Federal Defendants to Dismiss First Amended Complaint ("Defendants' Reply"), Docket No. 47 (Mar. 19, 2009).

[3]See Plaintiff's Opposition to Federal Defendants' Motion to Dismiss First Amended Complaint ("Plaintiff's Opposition"), Docket No. 46 (Mar. 13, 2009). On April 10, 2009, Broemer filed "supplemental opposition." (Docket No. 49 (Apr. 10, 2009).) In it, he contends that his "food was spiked and/or he was subjected to gas making him high during the time he drafted his Opposition to Defendants' Motion to Dismiss," and asks the court to consider further argument. The court has reviewed the document, which reproduces and critiques Ninth Circuit precedent that is irrelevant to resolution of this matter. Because it is not relevant, the court declines to consider Broemer's "supplemental opposition."

[4]Broemer V First Amended Complaint ("Complaint"), Docket No. 7 (Oct. 22, 2008), ¶ 55.

[5]*Id.*, ¶ 56.

[6]Broemer does not specify which defendant(s) are responsible for which violations.

[7]See, e.g., Complaint, ¶ 77 ("From 1993-1996 Defendants interfered with Plaintiff's legal career and his attempts to find temporary work"); ¶ 93 ("Defendants have, over the years, interfered with Plaintiff's academic goals, interfered so aggressively with his career as an attorney that he stopped practicing and lost his license, and over the course of several years sabotaged and deleteriously affected

2

interference, defendants coerced him to participate "in their plans"; tampered with his subconscious; and drugged his food, beverages, and personal hygiene products.[8] Broemer contends that he was thus compelled to accept employment with the U.S. intelligence community/federal government and was subjected to "training" that required periods of homelessness, physical hardship, and emotional abuse.[9] He also alleges that defendants' interference with his life drove him to the brink of suicide,[10] and destroyed his relationship with his fiancee and her daughter, whom he intended to adopt.[11] Broemer asserts that defendants "have planned and/or controlled and/or dictated the course of at least 4 of [his] closest romantic relationships and have also, in general, interfered with his intimate relations throughout the course of his life."[12]

He also asserts that defendants have continually used him as a "guinea pig" and unwilling participant in various unspecified "sting operations." Defendants have purportedly searched Broemer's home unlawfully, seized his creative and scholarly writings, publicized details of his private life and personal ideas, tampered with his computer, and caused noise and other disturbances

---

his chances of finding lucrative work in the entertainment industry or his chances of publishing"); ¶ 103 ("Defendants have continued to apply pressure and/or take retaliatory action against potential employers to prevent them from hiring him . . . ; Plaintiff does not know if these Defendants advised potential employers that Plaintiff was imprest [sic] or made false or misleading remarks about Plaintiff's past"); ¶ 104 ("Defendants have, on at least one occasion, drugged Plaintiff prior to an interview, and have, by attacking Plaintiff regularly over the course of many years, interfered with Plaintiff's mood, sociability, and reputation, and have thereby severely hampered his efforts to find other work").

[8]E.g., *id.*, ¶¶ 114-156.

[9]E.g., *id.*, ¶¶ 83-137. Broemer states that he "initially advised Defendants that he considered his position analogous to that of an economically distressed battered housewife who was unable to get away from her abusive husband, and later analogized kidnaping an individual, bringing that person to an island, and preventing the individual from leaving, while making a variety of offers; at least some Defendants have expressed general agreement with his analogy." (*Id.*, ¶ 102.)

[10]*Id.*, ¶ 79.

[11]*Id.*, ¶¶ 115-124.

[12]*Id.*, ¶ 69.

outside his dwelling.[13] Broemer alleges the existence of three distinct conspiracies: (1) among certain U.S. intelligence community members, a conspiracy to frame Broemer without his knowledge or consent; (2) among government inspectors, FBI agents, and law enforcement officials, a conspiracy to use Broemer "as bait" and deny "exculpatory evidence"; and (3) among one or more "intellectual property theft rings," a conspiracy to take Broemer's "creativity without his knowledge or consent."[14] Although he has reported these activities to local law enforcement, they have not responded to his pleas for help, leading Broemer to conclude that these officials are conspiring with federal agents to continue to disrupt his life.[15]

Within the past decade, Broemer has filed hundreds of documents with this court in four separate actions, including the present case.[16] Here, as in the prior actions, Broemer asserts a series of constitutional and common law tort claims against a variety of defendants,[17] as well as copyright claims. Additionally, he alleges violations of various articles of the California, Arizona, and Minnesota constitutions and the Racketeer Influence and Corrupt Organization Act of 1970 ("RICO"); unlawful nondisclosure of records requested under the Freedom of Information Act ("FOIA") and the Administrative Procedures Act ("APA");[18] deprivation of due process on account

---

[13] *Id.*, ¶¶ 228-229; 270-278; 313-317; 350-51.

[14] *Id.*, ¶ 64.

[15] *Id.*, ¶¶ 358-369.

[16] Broemer III comprised three separate cases – CV 01-04340 MMM (RZ), CV 01-01629 MMM (RZ), and CV 02-07241 MMM (RZ) – that were consolidated under action number CV 01-04340. An appeal to the Ninth Circuit is presently pending. Broemer IV was a single case, CV 03-09097 ER (RZ), in which the judgment entered against Broemer was affirmed by the Ninth Circuit on May 10, 2006.

[17] In addition to the federal defendants listed in note 1, *supra*, Broemer also asserts claims against the City and County of Los Angeles and a number of fictitious defendants.

[18] Complaint, ¶¶ 354-357.

of taxes owed;[19] and a series of recent infringements upon his personal privacy and security.[20] As noted, the federal defendants have moved to dismiss portions of Broemer's first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast as factual allegations. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

District courts must construe *pro se* complaints liberally. See, e.g., *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (indicating that courts must interpret *pro se* pleadings in the light most favorable

---

[19]*Id.*, ¶¶ 376-388.

[20]*Id.*, ¶¶ 260-261 (alleging that unspecified defendants killed two pet rabbits within the past year); ¶¶ 391-393 (alleging that an unknown individual made an unauthorized entry into Broemer's home in late September or early October 2008, stole his partially disabled cat, and spiked his toothbrush); and ¶¶ 410-415 (alleging that unspecified defendants "microwaved" Broemer while he was preparing his first amended complaint).

5

to the plaintiff). Nevertheless, a *pro se* plaintiff's complaint can be dismissed where it is clear from the allegations that he is not entitled to relief. See *Haines*, 404 U.S. at 520-21 (a *pro se* complaint must establish that plaintiff is entitled to relief); *Pearson v. Brace*, No. CIV S-06-2505 FCD DAD PS, 2007 WL 1574987, *1 (E.D. Cal. May 30, 2007) (considering a *pro se* complaint and noting that "the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact").

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990). It may also properly consider matters that can be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence. *Hal Roach Studios, Inc.*, 896 F.2d at1555 n. 19; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), cert. denied, 114 S. Ct. 2704 (1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).[21] Pleadings and orders filed in related federal court actions are a proper subject of judicial notice under Rule 201. See *Molus v. Swan*, CV 05-452 MMA (WMc), 2009 WL 160937, *2 (S.D. Cal. Jan. 22, 2009) ("Courts may take judicial notice of their own records. . . . Because this Court's prior orders directly relate to the matter before the Court, the Court grants Defendant Swan's request and takes judicial notice [of its prior orders]" (citations omitted)); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (taking judicial notice of pleadings filed in earlier, related cases); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue").[22]

---

[21]Considering matters that can be judicially noticed does not convert a motion to dismiss into a motion for summary judgment. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[22]Notice can be taken, however, "only for the limited purpose of recognizing the 'judicial act' that the order represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

### B. Res Judicata

Defendants first move to dismiss claims and issues that Broemer raised or could have raised in the prior round of litigation before this court, arguing that they are barred by the doctrine of res judicata.[23] Res judicata is an affirmative defense. See FED.R.CIV.PROC. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata"). "The facts necessary to establish an affirmative defense must generally come from matters outside of the complaint. Thus, with some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)." *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003). The Ninth Circuit, however, has specifically approved using a Rule 12(b)(6) motion to raise res judicata so long as application of the doctrine does not depend on disputed issues of material fact. See, e.g., *Bayone v. Baca*, 130 Fed.Appx. 869, 872 (9th Cir. May 5, 2005) (Unpub. Disp.) ("We have held that the affirmative defense of res judicata may be raised in a motion to dismiss under Rule 12(b)(6)," citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)). The court thus considers whether res judicata bars any of Broemer's claims.

#### 1. Claim Preclusion

Claim preclusion "applies when the earlier suit: (1) reached a final judgment on the merits; (2) involved the same cause of action or claim; and (3) involved identical parties or privies."[24] *Leon v. IDX Systems Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (citing *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)); see also *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1052 (9th Cir.

---

[23] Defendants' Motion at 6-8. Defendants do not move to dismiss Broemer's Freedom of Information Act ("FOIA") claim. (Complaint, ¶¶ 354-357.) Therefore, the court does not evaluate that claim in this order.

[24] The Supreme Court has noted that the terms and concepts associated with preclusion "are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts of the years." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1 (1984). In fact, the Supreme Court has itself "on more than one occasion . . . used the term 'res judicata' in a narrow sense, so as to exclude issue preclusion or collateral estoppel. . . . When using that formulation, 'res judicata' becomes virtually synonymous with 'claim preclusion.'" *Id.* For clarity, the court uses the more specific term "claim preclusion" wherever possible.

1  2005) (same, quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
2  322 F.3d 1064, 1077 (9th Cir. 2003)).  In federal court, "a final judgment retains all of its res
3  judicata consequences pending decision of the appeal."[25]  18A Wright, Miller & Cooper, FEDERAL
4  PRACTICE & PROCEDURE JURIS. 2d § 4433; see also, e.g., *Robi v. Five Platters, Inc.*, 838 F.2d 318,
5  327 (9th Cir. 1988) ("The present appeals in no way affect the 'firmness' of the Robi decisions in
6  the district court for the purposes of issue preclusion"); *National Post Office Mail Handlers,
7  Watchmen, Messengers, and Group Leaders Division of Laborers' Int'l Union of N. Am., AFL-CIO
8  v. American Postal Workers Union, AFL-CIO*, 907 F.2d 190, 192 (D.C. Cir. 1990) (citing Wright
9  & Miller).

10  One of the major functions of claim preclusion "is to force a plaintiff to explore all the facts,
11  develop all the theories, and demand all the remedies in the first suit."  18 Wright, Miller & Cooper,
12  FEDERAL PRACTICE & PROCEDURE JURIS. 2d § 4408.  "Repetitive litigation is not to be allowed
13  simply because the claim bears a new garb."  *Thistlewaite v. City of New York*, 362 F.Supp. 88, 93
14  (S.D.N.Y. 1973).  Thus, claim preclusion "is a broad doctrine that bars bringing claims that were
15  previously litigated as well as some claims that were never before adjudicated."  *Holcombe v.
16  Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quoting *Clements v. Airport Authority of Washoe
17  County*, 59 F.3d 321, 327 (9th Cir. 1995); see also, e.g., *San Remo Hotel, L.P. v. San Francisco City
18  and County*, 364 F.3d 1088, 1094 (9th Cir. 2004) ("Claim preclusion precludes relitigation of claims
19  that were raised or should have been raised in earlier litigation," citing *Migra*, 465 U.S. at 77 n. 1
20  ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never
21  has been litigated, because of a determination that it should have been advanced in an earlier suit"));
22  *Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ("Under res judicata, the prior
23  judgment is conclusive 'not only as to every matter which was offered and received to sustain or
24  defeat the claim or demand, but as to any other admissible matter which might have been offered
25  for that purpose,'" quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983)); *Costantini v. Trans
26  World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) ("[T]he doctrine of res judicata (or claim

---

[25]As noted, there is presently an appeal pending in Broemer III.

preclusion) 'bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action,'" quoting *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980)).

    **2.  Whether Broemer's Claims Against the Federal Defendants Are Precluded**

  In Broemer III, the court decided successive motions to dismiss over the course of eight years before finally entering summary judgment for defendants in April 2008.[26]  A summary judgment order constitutes a "final judgment on the merits" for claim preclusion purposes. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992). "[T]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in religitation of the same issue between that party and another officer of the government." *Id.* (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) and citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)). Accordingly, although Broemer has now named a variety of additional federal government agency defendants, the "identical parties or privies" requirement is satisfied. *Id.* ("The Federal defendants assert that the 1985 action brought by the Fund for Animals against the Secretary of the Interior, the Director of the National Park Service, and the Superintendent of Yellowstone, in their official capacities, precludes this suit. In the 1985 action, the Fund alleged that the named defendants allowed bison to leave Yellowstone

---

[26] See Order Granting Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim on Which Relief Can Be Granted ("MTD 1"), CV 01-04340 Docket No. 24 (Nov. 26, 2001); Order Granting Defendants' Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim on Which Relief Can Be Granted ("MTD 2"), CV 01-04340 Docket No. 72 (Sept. 5, 2002); Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Third Amended Complaint; Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("MTD 3 (FTCA)"), CV 01-04340 Docket No. 157 (Sept. 30, 2003); Order Denying as Moot Plaintiff's Motions to File a Fourth Amended Complaint, a First Supplemental Complaint, a Second Supplemental Complaint, a Third Supplemental Complaint, and a Fourth Supplemental Complaint ("MTD 4 (*Bivens*)"), CV 01-04340 Docket No. 158 (Sept. 30, 2003); Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Two "Revised Third Amended Complaints" ("MTD 5"), CV 01-04340 Docket No. 206 (Mar. 13, 2007); Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment ("MSJ Order"), CV 01-04340 Docket No. 253 (Apr. 14, 2008); Judgment, CV 01-04340 Docket No. 265 (May 30, 2008).

9

1  knowing that hunters, ranchers, and state game wardens in Montana were killing these animals. . .
2  . Although the two actions name different federal defendants, there is privity between the officers
3  of the same government . . ." (quotation marks and citations omitted)).  Thus, two of the three
4  prerequisites to claim preclusion are satisfied.

5        The third and final requirement is that this suit involve the "same cause of action."
6  Traditionally, four factors are considered when determining whether successive lawsuits involve the
7  same "cause of action." *Littlejohn v. United States*, 321 F.3d 915, 920 (9th Cir. 2003).  These are:
8  "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by
9  the prosecution of the second action; (2) whether substantially the same evidence is presented in the
10 two actions; (3) whether the two actions involve infringement of the same right; and (4) whether the
11 two actions arise out of the same transactional nucleus of facts." *Id.* at 921 (citing *Clark v. Bear
12 Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)).  Of these, the last criteria "is the most
13 important." *Constantini*, 681 F.2d at 1201 (citing *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.
14 1980)).  In assessing "[w]hat factual grouping constitutes a 'transaction,'" courts take a pragmatic
15 approach "giving weight to such considerations as whether the facts are related in time, space,
16 origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit
17 conforms to the parties' expectations or business understanding or usage." RESTATEMENT (SECOND)
18 JUDGMENTS § 24(b); see also *id.* cmt. a ("The present trend is to see [the concept of] claim in factual
19 terms and to make it coterminous with the transaction regardless of the number of substantive
20 theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff;
21 regardless of the number of primary rights that may have been invaded; and regardless of the
22 variations in the evidence needed to support the theories or rights"); *Western Systems*, 958 F.2d at
23 868 ("Res judicata bars both claims actually litigated and those that arise from the same transaction
24 an *could have been* litigated in a prior proceeding"); *id.* at 871 ("Whether two events are part of the
25 same transaction or series depends on whether they are related to the same set of facts and whether

10

they could conveniently be tried together," citing RESTATEMENT (SECOND) JUDGMENTS § 24(2)).[27]

A careful review of Broemer's first amended complaint and a comparison of it with the complaints and orders filed in Broemer III demonstrates that this suit satisfies the "same cause of action" requirement. First and foremost, this action arises out of the same "transactional nucleus of facts" as Broemer III. The core of both suits is Broemer's theory that he has been used as a pawn by the U.S. "intelligence community"; subjected to rigorous and dangerous training exercises and sting operations without his consent; retaliated against for attempting to assert his autonomy and petitioning for his rights; deceived and deprived of lucrative career opportunities in both the legal and entertainment industries; blocked from meaningful romantic and familial relationships; and poisoned or drugged. Broemer has allegedly suffered routine invasions of privacy, assault and battery, theft of personal items (including pets and bicycle parts), and infringement of his copyright(s). These facts are related in origin and motivation and would form a convenient trial unit; moreover, it would be reasonable for the federal defendants to expect that the allegations would be litigated as one unit.

In addition to these factual similarities, the first amended complaint alleges that Broemer's present claims are based on acts or omissions committed "over the course of 30 years,"[28] "since 1977,"[29] for "several decades,"[30] "over the course of many years,"[31] since "the early 80s,"[32] between

---

[27]By contrast, "California's res judicata doctrine is based on a primary rights theory. The California Supreme Court explained that the primary rights theory '[P]rovides that a "cause of action" is comprised of a "primary right" of the plaintiff, corresponding "primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.'" *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002) (citations omitted)).

[28]Complaint, ¶ 319.

[29]*Id.*, ¶ 327.

[30]*Id.*, ¶¶ 264, 345.

[31]*Id.*, ¶ 280.

[32]*Id.*, ¶ 212.

11

1  "2000-2007,"[33] and so forth. In other words, the temporal span covered by the present complaint is virtually identical[34] to that at issue in Broemer III. "Matters with a common historic origin ordinarily form a convenient package for joint litigation." 18 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE JURIS. 2d § 4407.

Turning to the remaining factors that are relevant in assessing whether the "same cause of action" requirement is met, Broemer clearly alleges infringement of the same rights as he asserted in Broemer III. As before, he alleges violations of a variety of constitutional rights, including free speech, privacy, property,[35] and due process.[36] Although Broemer this time pleads claims under three state constitutions – California, Arizona, and Minnesota – the substance of the rights allegedly violated by the federal defendants' acts and/or omissions is identical. See, e.g., *May v. Circus Circus Enterprises, Inc.*, No. 97-16055, 1997 WL 813996, *1 (9th Cir. Dec. 17, 1997) (Unpub. Disp.) ("May cannot defeat the application of res judicata by alleging new statutes or legal theories"); *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238-39 (10th Cir. 1992) ("Inasmuch as the doctrine of res judicata precludes parties from relitigating issues that were or could have been raised,

---

[33]*Id.*, ¶ 213.

[34]As discussed in more detail below, Broemer has added a few new allegations that concern acts or omissions that purportedly took place within the past year to eighteen months.

[35]The nature of Broemer's "property" claims is somewhat difficult to discern. It appears, however, that he alleges that defendants effected a "taking" of such things as writings, rabbits, bicycle wheels, and a prospective adopted daughter. Other than the rabbits and bicycle wheels, these are all matters that have been adjudicated previously.

[36]Compare, e.g., Broemer III First Amended Complaint, CV 01-04340 Docket No. 9 (Aug. 23, 2001) (first four claims for relief asserted violation of the First, Fourth, Fifth, and Ninth Amendments to the U.S. Constitution) and Broemer III Fourth Amended Complaint, CV 01-04340 Docket No. 207 (Apr. 2, 2007) (fourth cause of action for violation of First Amendment rights and "interference with intimate association"; fifth cause of action for violation of the Fourth Amendment; sixth cause of action for violation of the Sixth and Thirteenth Amendments) with Complaint (fifth cause of action for violation of the Fourth, Fifth, and Fourteenth Amendments; eighth cause of action for violation of the First Amendment; ninth cause of action for violation of the Fourth, Fifth, and Sixth Amendments; tenth cause of action for violation of the First and Ninth Amendments; eleventh cause of action for violation of the Fourth and Thirteenth Amendments).

parties cannot defeat its application by simply alleging new legal theories" (collecting cases)).[37] Similarly, although Broemer now asserts claims under RICO,[38] and for taxes owed,[39] these causes of action are rooted in the same transactional nucleus of facts as the claims alleged in Broemer III.[40] Likewise, Broemer's common law tort claims – negligence, assault, battery, infliction of emotional distress, breach of fiduciary duty, trespass, invasion of privacy, false light, and defamation – involve rights identical to those involved asserted in Broemer III,[41] and are based on similar if not identical

---

[37] See also *Banks v. Int'l Union Electronic, Electrical, Technical, Salaried and Machine Workers*, 390 F.3d 1049, 1052-53 (8th Cir. 2004) ("[R]eliance on different substantive law and new legal theories does not preclude the operation of res judicata. Where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim," quoting *Lane v. Peterson*, 899 F.2d 737, 744 (8th Cir. 1990) (punctuation omitted)); *Laychock v. Wells Fargo Home Mortgage*, Civil Action No. 07-4478, 2008 WL 2890962, *4 n. 5 (E.D. Pa. July 23, 2008) ("Asserting different laws, statutes, or theories of recovery will not by itself preclude application of *res judicata*," citing *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)); see generally 18 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE JURIS. 2d § 4411 ("A second action may be precluded on the ground that the same claim or cause of action was advanced in the first action even though a different source of law is involved. Claim preclusion may apply to theories advanced under different statutes, under common law and statute, or under the laws of different sovereigns").

[38] Complaint, ¶¶ 279-287 (first RICO claim); *id.*, ¶¶ 288-299 (second RICO claim).

[39] *Id.*, ¶¶ 376-388.

[40] For example, Broemer's twenty-first claim for relief alleges due process, equal protection, First Amendment, and Administrative Procedures Act ("APA") violations. Broemer contends that he received tax notices from the Internal Revenue Service ("IRS") in 1990, 1993, 2001, 2003 and 2004. (*Id.*, ¶ 377.) The crux of the claim, however, is that the federal defendants led Broemer to believe that "the debts were being paid, either from funds the government has that belong to Plaintiff, or in connection with [the] government's unilateral decision to use Plaintiff in law enforcement operations." (*Id.*, ¶ 378.) Similarly, Broemer's RICO claims hinge on a purported criminal enterprise allegedly run by defendants to plunder his creativity and to harass, intimidate, and threaten plaintiff (using, *inter alia*, means such as cutting his vehicle brakes and killing pets and other animals in Broemer's vicinity). (*Id.*, ¶¶ 279-299.)

[41] Compare, e.g., Broemer III Fourth Amended Complaint (first cause of action for breach of fiduciary duty based on the federal defendants' sabotaging of Broemer's career; second cause of action for nuisance alleging that defendants made noise outside Broemer's dwelling, spiked his food with toxins and chemicals, and followed him; and third cause of action for intentional infliction of emotional distress alleging that defendants separated Broemer from his fiancee and would-be adopted daughter) with Complaint (nineteenth cause of action for breach of fiduciary duty based on defendants' failure to "market" Broemer in the entertainment industry and their general interference with his career; second

facts. The same is true of his copyright claims.[42] Substantially the same evidence would be required to proceed in this action as was necessary in the prior litigation; permitting Broemer to relitigate the issues, moreover, would undoubtedly destroy the rights and interests established by the court's judgment in Broemer III.

Importantly, "when a ground of recovery . . . could not have been asserted in the prior action[, it] falls outside the scope of claim preclusion. *Littlejohn*, 321 F.3d at 920 (citing *Clark*, 966 F.2d at 1321 and *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recover that were *previously available to the parties*, regardless of whether they were asserted or determined in the prior proceeding" (emphasis added, citations omitted)). As noted, Broemer's first amended complaint includes a FOIA claim based on alleged denials of information requests made within the past twelve to eighteen months. This claim is not barred by res judicata. Broemer makes three additional allegations that apparently fall within this exception as well. First, he asserts that defendants killed two rabbits in his care "within the past year," or alternatively that they "used the animals in dangerous sting operations" without his consent.[43] Second, Broemer claims that an unknown individual made an unauthorized entry into his home in late September or early October 2008, stole his partially disabled cat, and spiked his toothbrush.[44] Third, he contends that defendants "microwaved" him on October 22, 2008.[45] Because none of these grounds for potential recovery existed at the time final judgment was entered in

---

cause of action for gross negligence alleging that defendants tampered with food and/or beverages sold to plaintiff; and third cause of action for intentional infliction of emotional distress alleging that defendants interfered with Broemer's engagement and other serious relationships).

[42]Compare, e.g., Broemer III Second Amended Complaint, CV 01-04340 Docket No. 30 (Jan. 9, 2002) (fifth cause of action for theft of Broemer's copyrighted creative and scholarly compositions) with Complaint (twelfth cause of action for seizure and infringement of Broemer's copyrighted works).

[43]Complaint, ¶¶ 260-261.

[44]*Id.*, ¶¶ 391-393.

[45]*Id.*, ¶ 412.

14

Broemer III, the claims are not barred by res judicata.[46]

Broemer fails to identify which defendant(s) are responsible for these events, however, and – more importantly for purposes of adequate pleading[47] – does not indicate the legal basis upon which he is entitled to relief for the purported conduct.[48] The court thus dismisses these claims, ***and only these claims***, with leave to amend to correct the deficiencies noted if Broemer is able to do so. As respects ***all other allegations asserted against the federal defendants, Broemer's first amended complaint is barred by res judicata,***[49] and is dismissed ***with prejudice***.[50]

---

[46] As noted, Broemer's complaint includes some allegations regarding the theft of a bicycle wheel or hub. The facts surrounding this theft, including when and where the theft allegedly occurred, are not sufficiently clear to permit the court to determine whether the matter could have been adjudicated in Broemer III. Accordingly, Broemer may include bicycle theft-related claims in his amended complaint, but must ensure that such claims include the requisite detail and state a legal basis upon which relief may be granted.

[47] Under Rule 8 of the Federal Rules of Civil Procedure, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.PROC. 8(a)(2); see also FED.R.CIV.PROC. 8(d)(1) (providing that "[e]ach allegation must be simple, concise, and direct"). A claim is adequate under Rule 8 if it provides fair notice of the nature of the claim and the facts underlying it. *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957), abrogated on other grounds by *Twombly*, 550 U.S. 544 (2007); *Grid Systems Corp. v. Texas Instruments Inc.*, 771 F.Supp. 1033, 1037 (N.D. Cal. 1991) ("Effective pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer").

[48] Instead, Broemer lumps together multiple and apparently random legal theories at the start of each "claim for relief" in his first amended complaint. Accordingly, his leporine allegations appear under the heading "5th, 14th Amendments, Equal Protection, Squaw Valley Development Company v. Goldberg, 375 F.3d 936 (07/20/2004), Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000); First Amendment Retaliatory Prosecution Hartman v. Moore, 547 U.S. 250 (2006), Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274 (1977) Title 42 Chapter 21 Subchapter 21 Section 1983 (Civil Action for Deprivation of Rights); 6th Amendment; Abuse of Process; Intentional Infliction of Emotional Distress; Malicious Prosecution; Breach of Fiduciary Duty; Negligence/Civil Conspiracy." (Complaint at 42.) His "microwave" allegations appear under the header "First Amendment/Interference with Petitioning." (Complaint at 65.)

[49] The sole exception is Broemer's FOIA claim.

[50] With his opposition, Broemer filed a "request to add doe defendant USA." In view of the court's conclusion that the vast majority of his claims against the federal defendants are barred by res judicata, the court denies this request as moot.

### 3. Whether Broemer's Claims Against the Los Angeles Defendants [51] Are Precluded

Although the Los Angeles defendants were not named in Broemer III, they were parties to Broemer IV.[52] Judge Rafeedie dismissed that action with prejudice for failure to comply with the court's orders;[53] the dismissal was subsequently affirmed by the Ninth Circuit on appeal.[54] Under the Federal Rules of Civil Procedure, dismissal for failure to comply with a court order operates as an adjudication on the merits *unless the order says otherwise*. FED.R.CIV.PROC. 41(b). Accordingly, the final judgment on the merits and identical parties prerequisites to the application of res judicata are satisfied with respect to the Los Angeles defendants as well. As with Broemer III, Broemer IV involved substantially the same causes of action as are alleged in the First Amended Complaint in this action. Then as now, Broemer maintained that the Los Angeles defendants tampered with his food and personal hygiene products[55] and followed a common plan to use him against his will in sting operations.[56] Broemer's present allegations that the Los Angeles defendants participated in depriving him of constitutional rights likewise echo claims asserted in Broemer IV. Accordingly, the court concludes that this action involves the same transactional

---

[51] The Los Angeles defendants include the City and County of Los Angeles as well as the Los Angeles Police Department.

[52] See Broemer IV First Amended Complaint, CV 03-09097 Docket No. 31 (July 16, 2004).

[53] See Order Denying Motion for Temporary Restraining Order and Motion for Injunctive Relief; And Dismissing Action for Failure to Abide Court's Order, CV 03-09097 Docket No. 124 (Sept. 30, 2004) at 2-3.

[54] See Judgment, CV 03-09097 Docket No. 145 (May 10, 2006).

[55] Compare Broemer IV First Amended Complaint (first cause of action for intentional contamination of Broemer's food and/or oral hygiene products with chemicals, poisons, and harmful biological agents) with Complaint (second cause of action for intentional contamination of or tampering with food and/or beverages sold to Broemer).

[56] Compare Broemer IV First Amended Complaint (first cause of action alleging that "law enforcement officers made Plaintiff a pawn in a sting operation without his consent and against his will") with Complaint (first cause of action alleging that "members of the Los Angeles Police Department, acting under color of law, followed a common plan to use Plaintiff in sting operations without right or justification, and without Plaintiff's knowledge or consent").

nucleus of facts as Broemer IV.  Further, the claims in both actions involve alleged infringements of the same rights, and would require the presentation of substantially identical evidence. Permitting the prosecution of Broemer V would destroy or impair defendants' rights as established in the Broemer IV judgment.  For all these reasons, the court concludes that, like Broemer III, Broemer IV operates as a bar to maintenance of the instant suit.[57]  Excepting only Broemer's FOIA claim, leporine claim, paralyzed cat claim, and microwave claim, *all allegations asserted against the Los Angeles defendants are dismissed with prejudice*.

### III.  CONCLUSION

For the reasons stated, the court dismisses Broemer's claims alleging harm to his rabbits, a stolen cat, and a microwaving incident in the last twelve to eighteen months with leave to amend. Broemer is directed to clearly and succinctly plead the legal bases for any claims arising out of these purported incidents in a manner that satisfies Rule 8 **within twenty days** of the date of this order.

The court holds that Broemer III and Broemer IV operate to bar Broemer's remaining allegations against the federal and Los Angeles defendants.  Consequently, the court dismisses the entirety of Broemer's first amended complaint (with the exception the FOIA, rabbit, cat, and microwave related claims) *with prejudice*.  Broemer is not permitted to file further complaints or applications for temporary restraining orders or motions for preliminary or permanent injunction based on these dismissed causes of action.  *Should he attempt to do so despite the clear terms of*

---

[57]Furthermore, given the substantial overlap between the cases, permitting Broemer to proceed would effectively signal that he is may contravene explicit court orders.  The Ninth Circuit "has recognized an inherent power of the trial court to dismiss in order to protect the integrity of its orders." *Fendler v. Westgage-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (citing *O'Brien v. Sinatra*, 315 F.2d 637 (9th Cir. 1963)).

*this order, the court will summarily strike the filing(s) and enter an order dismissing the entire action with prejudice for failure to abide by court orders.*[58]

DATED: July 30, 2009

                                        */s/ Margaret M. Morrow*
                                        MARGARET M. MORROW
                                        UNITED STATES DISTRICT JUDGE

---

[58]The Ninth Circuit has held that a district court "must weigh five factors before dismissing a case for failure to obey a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants; (4) the availability of less drastic sanctions; and (5) the public policy favoring disposition of cases on their merits." *Sears v. Sacramento County and Management*, No. 93-17066, 1994 WL 146123, *1 (9th Cir. Apr. 25, 1994) (Unpub. Disp.) (citing *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987), cert. denied, 488 U.S. 819 (1988)); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (discussing the five factors). Given the history of Broemer III and Broemer IV, the court concludes that these factors weigh heavily in favor of summary dismissal should Broemer once again fail to comply with the court's order. First, Broemer III remained pending on this court's docket for eight years. The action required *five* orders on motions to dismiss; all but the first were necessitated by Broemer's failure to abide by the court's orders. It is contrary to the public interest for one litigant needlessly to consume the limited resources of the court in such a manner, despite clear instruction to the contrary. To date, Broemer has displayed a similar pattern of behavior in this action, filing successive applications for temporary restraining orders that are substantively identical despite repeat denials. On a related note, the court must manage its docket so as to be able to afford litigants in other actions full and fair opportunities to adjudicate their disputes. Third, the risk of prejudice to both the federal and state defendants is pronounced: they, like the court, are entities with limited resources that should not be required to respond repeatedly to substantively identical pleadings filed in violation of court orders. See, e.g., *Sears*, 1994 WL 146123 at *1 ("To show prejudice, the defendants must show that the plaintiff's actions interfered with their ability to proceed to trial or interfered with the rightful decision of the case. . . . The defendants argue that it would be 'unfair to the numerous defendants in this action to further delay a resolution of this unmeritorious action, particularly in light of plaintiff's continuing refusal to state his claims in conformity with Rule 8 and Court orders.' The prejudice factor from the two-year delay weighs in favor of the defendants . . .").

     With respect to the availability of less drastic sanctions should Broemer ignore the directives in this order, the court's experience with plaintiff – which includes repeated filings that directly contravene express and unambiguous court orders – indicates that nothing short of dismissal will provide a viable and efficient alternative. Accordingly, if Broemer files pleadings that violate this order, dismissal of the entire action with prejudice will be appropriate. Finally, although "[t]he fifth factor almost always weighs against dismissal, [ ] it does not outweigh the other four factors." *Id.*